Next case is number 15-1860, In Re Portage Electric Products, Mr. Schechter. May it please the Court. There's no computer in this case. And there's no patent donor either. The patent owner's lost interest apparently. This is almost pro bono. The patent will probably expire almost no matter what happens. And all we're talking about in this case is a set of added claims that were added during the 11 years that this thing's been pending. They were added now seven years ago. And they were rejected six years ago. And they've always been rejected until the board. So because of the way the old inter partes re-exam system worked, those added claims get wiped off completely. Basically this entire proceeding gets wiped out when the patent expires next year. Nonetheless, there are some interesting aspects here. We went through this process and the original claims of the patent were rejected. Let me ask you a question because your interest seems to be the new ground of rejection. Yes, sir. But you say at page 12 of your blue brief, I'm putting in ellipses, the PTAB issued a new ground of rejection that was never raised by the examiner as a straw man and then knocked it down without PPI ever having had any opportunity to address it. Right. Well, if they knocked it down, as you allege, how could they have relied on it? Oh, it's very clever because what they did was… Maybe that would be clever. Yeah, it was actually. Insidious. It was the most surprising thing to read the board's decision because obviously there were six other grounds that were in there and everything else was a matter of legal interpretation. But here they recast the examiner's actual rejection and then overturned it. So they didn't overturn the rejection that the examiner made, which we could have dealt with. Instead, they made up another rejection. They used a word. You said they recast it. They recast it. That's right because in 10 years, the word inherent had never been used by anyone. Remember, in the old inter partes re-exam system, this goes through multiple levels of review. Nobody ever thought there was an inherency question here. We never talked about it during any of the… Nor says PTAB did they. Well, they say they didn't, but it's very hard for them to say that when you read the actual statement in the board's decision, which says the examiner does not direct us to persuasive evidence that positive temperature coefficient characteristics would be inherently present in thick film resistors and so on, and then that they're looking for the examiner's statement about that. How can it be a new ground of rejection when they didn't reject it based upon that? It seems to me that you've created a very technical argument to dispute the fact that they're finding that PTC and the other thing aren't the same. But we've never said they were. That's the whole point. That's not a technical point that anyone would have ever asserted during this proceeding. That's what makes it so bizarre to read that statement because they're not the same. The technical point being that thick film resistors might not be temperature sensitive? No, but not all thick film resistors are necessarily PTC resistors, and we agree with that. It was never an issue during that. But your point is that some are. Some are, right. So how do you know which ones are? Because the person of ordinary skill in the art knows about Major, knows about Hofsass, reads how they work in this patent, looks at Muller. If it quacks like a duck and swims like a duck and flies like a duck, the examiner is entitled to say, I know, that's a duck. I've seen that duck before in devices of this type in Major, in Hofsass, in Muller. Why aren't you just arguing that the board's finding that PTC and thick film are different is wrong? Because it's not wrong. It's correct. That's the strangest thing. But what your argument is that someone with skill in the art would have known to use a thick film resistor that was temperature sensitive. Someone skilled in the art would have looked at Muller and recognized that that's a thick film resistor in that device because it had been used in devices exactly like that before. The first time I ever see an automobile. Was it necessary to find in Muller that the thick film resistor was temperature sensitive? Yes. It is necessary. Yes, it's exactly necessary. That's the bizarre way that these claims came up. Why is that necessary? Because the board, the director's brief mistakenly refers to claims 13, 14, and 15 as independent. They're actually dependent claims from which start two identical chains of dependent claims. The only difference is the same limitation wherein or further comprising the PTC resistor. That's it. That's the same limitation that's in 13, 14, 15 from which flow the odd-numbered set of dependent claims. I don't understand. Why is it necessary to find that the thick film resistor in Muller is a PTC resistor when there's other art that tells you to use that? Oh, it's not necessary. The examiner's entitled to say, Muller teaches, suggests, discloses the PTC resistor to a person of ordinary skill in the art. The examiner, I believe, said that, and it's correct. Why did the examiner say that? I'm still not understanding. Let's assume for the moment that Muller, that the board was right, that Muller does not disclose a PTC resistor. I would have thought your argument was that PTC resistors were well-known, they were disclosed in other art, and that there was a motivation to combine them. But you don't seem to be arguing that. No, we suggested that after the examiner made this rejection. We said to the examiner, and now this brings in the major patent, we said, you know, major discloses the same thing as Muller, but it does it in more detail, in more words. It identifies in more detail what those component parts are. So to any extent that the patent owner argues that any one of these elements isn't shown in the prior art, just substitute, just cite to major, because it says it right there. It says it's a PTC resistor.  That the board made an error in not looking to that combination. Well, major was not ever applied because the examiner said it was cumulative. So we said, okay, that's good enough. If it's cumulative, it means, according to the patent office, cumulative means it discloses the same subject matter. So we're happy with that. So what you're saying is that you argued major to the examiner, that the examiner didn't rely on major for this purpose. So by the time it got to the board, that would have been a new ground of rejection, and the board declined to substitute that ground of rejection for the earlier rejection. Yes. We could have gone back and dealt with major as a ground of rejection. Whether the examiner chose to do it, we cited it under the- We did, Your Honor. Before the board, our alternative request was rather than just affirm, if you agree with the patent owner in its appeal, just remand this back and reopen prosecution. Let's just deal with it. Are you raising that on appeal? We didn't. Well, maybe you shouldn't. It's one of the options that this court can do, can just remand with instructions to continue the prosecution. We could, but I don't see why we should when you didn't make the argument. I thought that was simply part of the relief that would get granted if the board's re-examination, excuse me, re-hearing decision is reversed. If it's reversed, we've got to go back anyway. The question is what to do when we go back. So we cited major again under Section 948, Rule 948, which allows us to- This is a very narrow question. It's extremely narrow. It's a remarkably narrow case. It's a single point, a single issue. I could talk about this some more, but I think you understand what we're talking about here. We were happy. So again, we have six grounds of rejection where this claim is rejected. The examiner says that major is cumulative in Muller. I don't have to substitute it in. That's good enough for us. We're criticized by the director now for not raising more grounds of rejection, although we had six that were good at that point. All right. I mean, how many are we supposed to raise that we are winning on? I mean, Charlie Sheen's immortal words. We were winning for 10 years. Multiple grounds. No original claim. All the added claims rejected. Multiple grounds, multiple times. Why is the examiner not entitled to interpret Muller and say, I understand what Muller discloses. I've seen this before. A person of ordinary skill in the art knows what those devices are. That's a PTC resistor in that thing. The examiner goes ahead and says, the way Muller describes its operation is exactly the way the patented, the claimed invention works. Exactly the same. So the examiner understands it. Why does it have to be an ipsissimus verbis test in an obviousness case? Why does the examiner have to call out the component by its name? I mean, it says it is. I understand. This is what it is. Again, I go back to my analogy. I somehow fall from space and I see an automobile for the very first time. I look at it and I think, I don't know, maybe that's a house. It's an interesting looking house. People can live in it. You can get in and out. It has heat, whatever. It has air conditioning. But I'm not. I don't get dropped on the planet for the first time. I see that and I see round things on it. I see four black things on it. And I know those are wheels and they spin. It doesn't say they're wheels and they spin on it, but I've seen cars before. I know what it is. That's all that happened here. The examiner looked at all this stuff, considered all of the expert declarations that were put in by the patent owner, saying PTC and resistors and thick film resistors aren't the same thing. We never argued they were. We agree. There are probably thick film resistors that aren't PTC resistors. But in this application, in Mueller's disclosure, a person of ordinary skill in the art recognized it as such, and the examiner said so. That's all. It's really quite simple. So when we got the board's decision, and it said that the examiner has not provided persuasive evidence that all PTC resistors, such as the one in Mueller, that all thick film resistors have PTC properties, I scratched my head. I said, we never argued that. Nobody ever argued that. That wasn't the examiner's position, that thick film resistors inherently had this characteristic. If it did, there would be clues. One, the examiner would have said so, perhaps, at some point in 10 years. The word inherent might show up in the file history. It doesn't. The examiner would have complied with the MPEP section, which tells him if you're going to rely on an inherent property of something, you have to provide a factual explanation for it. There is no factual explanation for that. Why? Because he wasn't doing that. Nobody understood that to be the case until the board's decision. Now, of course, on the hearing decision and before this court, the director and the board had to say, no, it wasn't a new ground of rejection. It wasn't an inherency rejection. Well, of course, they have to say that, because if they don't, they have to reopen prosecution. So, I mean, I understand the litigation position they have to take, but here we are. Okay. You're into your rebuttal. Do you want to save the round? I'll finish. Thank you. Okay. Thank you, Mr. Sheridan. Ms. Craven? Thank you, Your Honor. May it please the court. Let me give you a hypothetical. Suppose what had happened here is that the requester had argued for obviousness over a combination of Mueller and Major, and the examiner had said, I don't need to rely on that combination because I find the PTC and resistor in Mueller itself. And it goes up to the board, and the board, as here, says, well, we don't think that Mueller discloses the PTC and resistor. And is there a right to go back to the examiner again and have him consider the combination of Mueller and Major? And if the board refuses to do that, can the requester come here and say you should have done that? So if Portage had proposed a ground of rejection based on Mueller and Major and the examiner had refused to enter that as a new ground or accept that as a ground of rejection, they could have appealed that denial of the new ground of rejection of consideration to the board. And then, yes, if the board had agreed with the examiner and affirmed not to do prosecution on that ground of rejection, this court could consider and reverse the board's decision, and it could be remanded for a consideration of that ground of rejection. But that's not what they did here. That's not what Portage did here. That's correct. They never presented to the examiner or the board except at rehearing, so there wasn't a request before rehearing based on the Meyer reference. So the examiner found it cumulative, but they weren't presented with a ground of rejection to provide them with Mueller teaches the electrical switch and association, or they could have relied on half-sass teaches a PTC resistor and one of skill in the art would have known to combine them. They never presented that ground of rejection. Instead, the ground of rejection was based on Mueller and the examiner found that Mueller's film resistor is a PTC resistor without any other explanation, and the board reversed that rejection, didn't enter a new ground by saying inherently. They simply said there's no express teaching of a PTC resistor in Mueller, and Portage doesn't appear to challenge the no express teaching, and then said there's no persuasive evidence of any inherent teaching of a PTC by Mueller's thick film resistor. And Portage appears to be making a doctrine of equivalence argument. They function the same way, do the same thing, so they must be the same, but rejects what the examiner found that PTC resistors are necessary, thick film resistors are necessarily PTC resistors, but that's not a finding that Mueller, in fact, teaches the PTC resistor and they're stuck with the grounds of rejection that they raised in the inter-parties re-exam. So unless there's any further questions, we would ask that you affirm the board's decision. Thank you. Thank you, Ms. Craven. Mr. Schechter, you've got over two minutes here. Thank you, Your Honors. I'll just say again that at the time that major was raised, it was cited not to raise a new rejection. We already had six grounds of rejection, including Mueller, but we did recognize at that point that perhaps that the major reference, because it was more explicit, could be used, and we cited that under Section 948B, which allows the examiner to consider that, to rebut any position as to features of the claimed invention that the patent donor asserts are not present in the art, which is exactly what was going on at the time. The experts, Finnegan and Kime, were saying, it doesn't show a PTC resistor. Well, we said, it does. It's right there. The examiner can see it, and you know it's a PTC resistor because it's the same device using the same component parts as in the other prior art that you already have of record. So you could do that. The examiner chose not to do that. That's within the examiner's profits. It wasn't really necessary to have yet another ground of rejection at that point, but it wasn't based on inherency. We weren't arguing that point at that stage of the case. The examiner never bought that argument, that it had to be, that it necessarily was. We were only talking about what is in Muller, and Muller described its operation exactly the same way as the claimed invention. Thank you, Your Honor. Okay. Thank you, Mr. Schechner. Thank both counsel. The case is submitted.